IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| TIMOTHY EARL BRADHAM, JR., ET. AL., | : : : | |
| Plaintiffs, | : : | |
| vs | : : | 1:03-CV-79 (WLS) |
| CRAIG BUSH, ET. AL., | : : | |
| Defendants. | : | |

## ORDER

Before the Court are Defendants Brad Bush's (hereinafter "Brad Bush or Brad") and the Craig Bush and Brad Bush Farm Partnership's (hereinafter "Partnership) motion for summary judgment. (Doc. No. 53). For the following reasons, Defendant's motion for summary judgment (Tab 53) is **GRANTED.**

## BACKGROUND

The essential facts of this case are not in dispute. The captioned case arises out of a motor vehicle collision which occurred on April 28, 2003, in Baker County, Georgia. In the original complaint for damages, the plaintiffs, Timothy Earl Bradham, Jr., by next friend Betty Starks, and Betty Starks, as administratrix of the Estate of Timothy Earl Bradham, Jr., sued Craig Bush and Darren Crittenden ("Crittenden") alleging that, on the date of the collision, Crittenden was driving a Western Star spreader truck (the "spreader truck") which collided with a Cadillac automobile which was occupied by Timothy Earl Bradham as a passenger. Crittenden

1

was alleged to be within the course and scope of his employment with Craig Bush at the time of the collision, and negligence on the part of Crittenden was alleged to have been the proximate cause of the collision. Plaintiffs sought recovery from Crittenden and Craig Bush for the full value of the life of Timothy Earl Bradham, for pain and suffering experienced by Timothy Earl Bradham in connection with the incident, and for other related alleged damages.

Following the filing of the original complaint an amended complaint for damages was filed, adding as a plaintiff Willie C. McNabb ("McNabb"), who was alleged to be the father of C'erra McNabb, who was also killed in the collision. McNabb asserted a claim for the full value of the life of C'erra McNabb. Added as defendants in the first amended complaint were Chad Bush, individually, and the Chad Bush and Craig Bush Farm Partnership ("the Farm Partnership"), and also added as defendants were Wade Sexton d/b/a Sexton Farms and Trucking ("Sexton") and Freeman E. Gardner.[1] According to the amended complaint, at the time of the collision, Crittenden was driving the spreader truck within the course and scope of his employment with Craig Bush, individually, and within the course and scope of his employment with Chad Bush and with the Farm Partnership, so that the alleged negligence on the part of Crittenden is to be imputed to Craig Bush, to Chad Bush, and to the Farm Partnership, jointly and severally. The amended complaint also contained assertions to the effect that Freeman Gardner ("Gardner"), alleged to have been employed by Sexton, drove another vehicle in the vicinity of the collision in such a fashion that the vehicle driven by Gardner contributed to the cause of the collision, making Gardner and Sexton liable for the

---

[1]. Freeman Gardner and Sexton Farms have since been dismissed by Plaintiffs from the instant action. (Doc. No. 66).

alleged wrongful deaths of Timothy Earl Bradham and C'erra McNabb and for associated pain, suffering and other damages.

A second amended complaint was filed, adding as plaintiffs Gail Stewart as administratrix of the estate of Esjuanta Milleantha Stewart and as administratrix of the Estate of C'erra McNabb. Under the second amended complaint, recovery was sought by Gail Stewart for the alleged wrongful death of Esjuanta Milleantha Stewart, who also died as a result of the collision, and for pain and suffering and other damages arising from injuries to Esjuanta Milleantha Stewart and C'erra McNabb as a result of the collision. Finally, a third amended complaint was filed by Plaintiffs in order to substitute Sexton Farms Trucking, Inc., as a party Defendant in place of Sexton.

According to Plaintiffs, Defendant Crittenden was in the employ of Craig Bush ("Craig Bush or Craig") and his farm at the time of the accident. On the day of the accident, Crittenden was driving a spreader truck owned by Craig Bush filled with chicken litter. He was driving to a Ms. Timmons farm where he was directed to spread the litter as fertilizer. Crittenden testified that he was employed by Craig Bush and paid by the day. Further, he received a W-2 form reflecting that he was paid from Craig Bush's farm account.

Defendant Craig Bush is a farmer in Baker County growing peanuts, cotton, corn and wheat. Craig has one farming operation which he owns as a sole proprietorship. In that operation he leases land on which to grow his crops. Craig also farms with his brother, Chad Bush, in a Partnership. The Farm Partnership leases 725 acres which is farmed by the Farm Partnership. The Farm Partnership farms on a different tract of property from that leased and farmed by Craig Bush individually. The Farm Partnership has a separate bank account from the

farming operation conducted by Craig Bush individually. Crittenden, who was driving the spreader truck at the time of the collision, was employed by Craig Bush in his individual capacity. Crittenden did not work for Chad Bush or for the Farm Partnership at the time of the collision. At the time of the collision, the spreader truck was owned by Craig Bush in his individual capacity. Craig Bush used the spreader truck as part of a separate business from the Farm Partnership, spreading fertilizer and other materials for his customers from time to time. Neither Chad Bush nor the Farm Partnership owned any interest in the spreader truck. The spreader truck was never claimed for depreciation on a Farm Partnership income tax return, but Craig Bush did claim the spreader truck on his personal income tax return. When the spreader truck was used on the acreage farmed by the Farm Partnership, the Farm Partnership paid Craig Bush in his individual capacity for the use of the spreader truck.

Craig Bush's brother-in-law, Handley Taylor ("Taylor") was also in the business of spreading for the public, and Craig Bush had bought the spreader truck to help Handley in the spreading business. On the day the collision occurred, Taylor was supposed to be doing some spreading on Ms. Timmons's place, but Taylor could not get to the job. Craig Bush was going to do the spreading job on Ms. Timmons's place for Taylor, and then "swap out" the work with Taylor at a later date. The "swap work" by Taylor was to be performed on land leased by Craig Bush in his individual capacity. Crittenden, Craig Bush's employee, was driving the spreader truck in that connection at the time the collision occurred. The work being done by Crittenden with the spreader truck at the time of the collision was for Craig Bush individually and not for the Farm Partnership. Taylor never did any swap work for the Farm Partnership, and the swap work that Craig Bush's employee, Crittenden, was doing

for Taylor at the time of the collision was for Craig Bush individually and not for the Farm Partnership. The work that Taylor was to do in return was for Craig Bush individually and not for the Farm Partnership. No swap work was ever done between the Farm Partnership and anyone else. The Farm Partnership never did any work for Ms. Timmons. The Farm Partnership never did any work on any property other than that acreage leased by the Farm Partnership. The Farm Partnership never paid Crittenden for the work he did, either before the collision or after the collision.

  Chad Bush is a dentist with his practice located in Lee County, Georgia. At the time of the collision, Chad Bush was a partner in the Farm Partnership with Craig Bush. The Partnership leased one tract of land from Joe Heard. The Partnership had a separate bank account with a bank in Colquitt, Georgia. Chad knew Crittenden to be an employee of Craig Bush. Chad knew Crittenden well enough to speak to him when he saw Crittenden on Craig Bush's farm. Chad had no knowledge that Crittenden was ever employed by the Partnership. Chad Bush knows Handley Taylor only in the context that Craig Bush is married to Handley's Taylor's sister. Chad has never done business with Handley Taylor, and he had no knowledge that the Partnership has ever done any business with Mr. Taylor. Bush neither had knowledge of the spreader truck involved in the collision, nor that it was ever used in connection with the Partnership. Chad Bush did know that he personally had no ownership interest in the spreader truck, and the Partnership had no ownership interest in the spreader truck. Chad had no knowledge that the Partnership had ever done any work for any third party, or any work other than that associated with farming the acreage leased by the Partnership. Chad was never involved in any business that did custom spreading for other people. Chad was never involved

with farming on Ms. Timmons's place where Crittenden was doing the spreading job when the collision occurred. Neither Chad Bush nor the Partnership had any ownership interest in that farm, either leasehold or other. The Partnership never farmed Ms. Timmon's place.

Plaintiffs, however, maintain that there is an identity of interest between Craig Bush's farming operation and the Farming Partnership, which includes Chad Bush. Besides pointing to particular interests that show that at times the operations were operated as one or at least closely intermingled, Plaintiff's point out that certain banking records which would clarify the question have been requested and not produced by Defendants.

## **SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on

which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case.  Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that  the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. Fitzpatrick, 2 F.3d at 1116.  If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. Id.  Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party.  Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## ANALYSIS

Defendants Chad Bush and the Farm Partnership ("Chad or Partnership") seek summary judgment on all of Plaintiffs' claims for negligence.  Chad argues that Crittenden was not employed by either Chad or the Partnership at the time of the accident.  Instead, if Crittenden is liable, he is only liable to the extent that he was acting within the scope of his employment with Defendant Craig Bush.  Craig Bush, as an individual proprietor admits that Crittenden was acting within the scope of his employment when the collision occurred.

O.C.G.A. § 14-8-13 establishes the statutory basis under which a partner or a

Partnership can be held liable for a wrongful act of one of the partners:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefore to the same extent as the partner so acting or omitting to act.

O.C.G.A. § 14-8-13.

The law in Georgia is well settled that partners of a partnership are "not responsible for the torts of each other merely by reason of their relation as partners, and that in order for such liability to exist the wrong must have been committed within the legitimate scope of the partnership business; . . ." Rogers v. Carmichael, 184 Ga. 496, 504, 192 S.E.2d 39, 44 (1937).

There is little question but that, at the time of the collision, the Partnership was in existence with respect to Chad Bush. Despite general attacks on the evidence by Plaintiff, there is also no question but that, at the time of the collision, Crittenden was the employee of Craig Bush and was not the employee of Chad Bush or the Partnership.

Plaintiffs attempt to point to the purchase of chicken litter by the Partnership and the intermingling of equipment used during the operation of the two enterprises as evidence that at the time of the collision, Crittenden was an employee of the Partnership. Despite Plaintiffs' complaints about the lack of discovery relating to bank records concerning Craig Bush's personal bank records, Plaintiffs were provided with records relating to the Partnership and other records that showed that Crittenden was paid by Craig Bush personally. These facts alone do show there were times that the operations operated very closely, but the overall evidence shows that they were separate and distinct operations. Further, the overwhelming evidence shows that Craig Bush also operated as a "side" business a fertilizer spreading operation, which Craig Bush and

Crittenden were engaged in, that was completely separate from the Partnership.[2]

There is not admissible evidence that shows that Crittenden was working for the Partnership, or Chad Bush, at the time of the accident in question.  In fact, the evidence is such that there is a valid question of whether Crittenden was ever legally employed by the Partnership or Chad Bush up until the close of discovery, even though Craig Bush did pay Crittenden to do some work that benefitted the Partnership.  Therefore, Defendants, Chad Bush and the Chad and Craig Bush Farm Partnership are entitled to summary judgment on all of Plaintiffs claims.  Accordingly, the motion for summary judgment (Doc. No. 53) is **GRANTED.**  The Clerk is Ordered to place this case on the trial calender for the January 2007 Albany Trial Term for the trial of all remaining claims.

**SO ORDERED**, this   20TH   day of November, 2006.

    /s/W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2]. The exact relationship of the fertilizer spreading operation and Craig Bush's individual farming operation is not before the Court and has not been raised by the parties except in context of their relationship to the Partnership.